```
               IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

            Plaintiff,

       vs.                               Case No. 10-1434-RDR

$64,895.00 IN CURRENCY  ,

            Defendant.
_____
```

## MEMORANDUM AND ORDER

This is a forfeiture action which is before the court upon a motion to suppress filed on behalf of claimant Michael Shaw.  The court has conducted an evidentiary hearing and shall deny the motion to suppress because claimant Shaw was legitimately stopped for a traffic offense and he voluntarily consented to additional questioning and to a search of his car's trunk after the traffic stop was completed.

I. Factual background

Claimant Shaw was driving an automobile heading west on I-70 in Saline County, Kansas on October 22, 2010.  Forrest Jones was a passenger in the car.  Kansas Highway Patrol Trooper Scott Walker, an experienced officer with drug interdiction training, was traveling east on I-70 when he observed Shaw's vehicle pass a large group of vehicles while in a construction area which was posted as a no-passing zone.  According to Trooper Walker, Shaw passed a

truck and merged right into a single lane of traffic causing the truck to brake to avoid a collision. Trooper Walker turned his vehicle around and decided to stop Shaw for passing in a no-passing zone.

Shaw stopped his car without incident. Trooper Walker approached the vehicle on foot from the passenger side. Trooper Walker asked for driver's licenses and identification. Shaw did not have a driver's license, but he had an ID card. Jones had a driver's license. From his questions to Shaw and Jones, Walker learned that they were traveling from Iowa to Phoenix, Arizona to attend car races. The car belonged to the girlfriend of Jones' father. It was a 1997 Mercury Grand Marquis. It appeared very "lived in" and dirty. There was a strong odor of air freshener. Trooper Walker thought he saw three cell phones in the car.

Trooper Walker went back to his vehicle and asked the dispatcher to check for criminal histories on Shaw and Jones. Both had assault convictions and Shaw had a 1995 marijuana conviction. Trooper Walker testified that he "Googled" the car races in Arizona and learned that they were three weeks away.

He asked Shaw to exit the vehicle and Trooper Walker patted him down. Shaw was admittedly nervous. Walker testified that Shaw seemed excessively nervous, particularly after Trooper Walker explained that he wasn't going to arrest Shaw for driving without

2

a license.  As Shaw was standing immediately behind the trunk of the Grand Marquis, Trooper Walker returned Shaw's identification and gave him a citation.  He cautioned Shaw against passing in a no-passing zone.  Then, he told Shaw to have a safe trip and said that Jones would probably have to drive.

Trooper Walker turned and took a couple of steps toward his car while Shaw started walking toward the passenger-side door where Jones was seated.  After a few seconds, Trooper Walker turned and asked if Shaw would mind if Trooper Walker asked him something.  Shaw indicated he had no objection.  Trooper Walker then asked if Shaw was carrying any illegal drugs or guns in the car.  Shaw said no.  Trooper Walker also asked if Shaw was carrying any large amounts of cash.  Shaw answered affirmatively, indicating that he had about "50 grand" on him because he was interested in buying a commercial welding rig.  Shaw said the money was in the trunk of the car in his bag.

Trooper Walker asked Shaw to stand aside and to ask Jones to hop out of the car.  Shaw appeared to hand Jones his driver's license and/or other documents and relayed the request for Jones to hop out of the car.  Jones exited the car and spoke with Trooper Walker behind the car while Shaw stood in front of the car.  Trooper Walker questioned Jones about whether there was money in the car.  Jones' answers were consistent with Shaw's answers.

Jones said the money (he did not know how much) belonged to Shaw and that Shaw was interested in buying a truck to do pipeline welding.

Trooper Walker then directed Jones to sit in the ditch and asked Shaw to return. At this point, a drug dog in Trooper Walker's car apparently exited the car and moved aggressively toward Jones. Trooper Walker called the dog off and returned the dog to his car. There is no indication that Jones was hurt or that the dog came very close to Jones.[1]

After putting the dog back in the car, Trooper Walker returned his attention to Shaw and asked him again whether there were drugs in the car and where the cash was. Shaw denied there were drugs in the car and said that the cash was in the trunk. Trooper Walker then asked Shaw, "you want to open it up and show me?" Shaw said "I can, I can." Shaw then proceeded to open the trunk of the car. Shaw said there was about "60 grand" in the bag in the trunk. Shaw said he didn't have a receipt for the money. Trooper Walker testified that the money was vacuum-sealed in a sack, which he thought was unusual. He had seen such packaging in connection with drug investigations before. Trooper Walker decided to seize the

---

[1] The interaction between Trooper Walker and Shaw and Jones is recorded and the court has reviewed the recording which is an exhibit in this matter. But the actions of the dog were not in the view of the camera. The recording only shows to a limited extent how Trooper Walker reacted to what the dog was doing, not the dog itself.

currency and arranged for Shaw and Jones to travel to Salina for further questioning.

Throughout the traffic stop, Trooper Walker presented himself in a calm and unthreatening manner. His tone of voice did not suggest that claimant Shaw had to answer additional questions once he had returned Shaw's documents to him and given him a traffic citation. Trooper Walker was wearing a holstered firearm, but there was no reference to it or indication that the weapon might be utilized in any fashion. Trooper Walker was the only officer at the scene.

## II. Burden of proof

The court assumes that the claimant's burden in this matter is the same as that of a criminal defendant making a motion to suppress under similar circumstances. Therefore, in general, claimant Shaw has the burden of proof. See U.S. v. Clarkson, 551 F.3d 1196, 1200 (10th Cir. 2009)(the proponent of a motion to suppress has the burden of proof). "To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights." U.S. v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir.) cert. denied, 531 U.S. 887 (2000). A defendant also bears the burden of showing a factual nexus between the illegality and the challenged evidence. Id. If these two showings are made, the

government must prove that the evidence sought to be suppressed is not "fruit of the poisonous tree" either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.  Id.  If the government is relying upon consent to justify the lawfulness of a search, the burden of proving that the consent was freely and voluntarily given is upon the government.  U.S. v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993).

III.  Claimant's arguments for suppression

    A.  The initial stop

Claimant's arguments for suppression in this case are threefold.  First, claimant argues that the initial traffic stop was not supported by adequate cause.  The court rejects this contention.  Trooper Walker was a credible witness to the court.  We conclude that Trooper Walker observed claimant pass vehicles in a no-passing zone in violation of K.S.A. 8-1520.  See U.S. v. Shareef, 100 F.3d 1491, 1500-01 (10th Cir. 1996)(a traffic stop is justified when officers observe traffic violations).

    B.  Freedom to leave at conclusion of traffic stop

Second, claimant Shaw argues that he was illegally detained without his voluntary consent after Trooper Walker issued the citation and returned his identification or other documents to

6

claimant and Jones. Claimant contends in support of this argument that Jones was never informed by Trooper Walker that Jones and claimant were free to go. Jones needed to be the driver since he had the only valid driver's license. Therefore, claimant contends that he was not free to go as long as Jones did not know that Jones was released to go.

Neither Jones nor claimant testified in this matter. So, the court does not have evidence regarding what they were thinking, or what Jones heard, or what Jones would have done if he had heard that he was free to go.

The important point here is that claimant Shaw knew that he was free to go. Trooper Walker finished the citation and gave it along with the other paperwork to Shaw. He told Shaw, "you guys have a safe trip," turned away, and walked a couple of steps toward the patrol car. This signaled to claimant Shaw that the traffic stop was concluded and that he was free to go. See U.S. v. Hunter, 663 F.3d 1136, 1144-45 (10th Cir. 2011); U.S. v. Ledesma, 447 F.3d 1307, 1314 (10th Cir. 2006). At that point, Shaw's decision to answer more questions from Trooper Walker was voluntary and consensual.

If Jones did not hear what Trooper Walker said and believed that he was still detained, Shaw may not rely upon that to argue that Shaw's detention was unlawful. Shaw was aware that he was

7

free to go and he could have informed Jones that they both were free to go. Instead, he answered more questions from Trooper Walker. Since claimant presented no evidence that Jones would have left in the car <u>with Shaw</u> if Trooper Walker had told Jones directly that he and Jones were free to go, claimant has not proven that the evidence found as a result of the search was the fruit of claimant's illegal detention. A similar situation occurred in <u>Nava-Ramirez</u>, where a driver did not succeed in suppressing evidence taken during a search of a car. In <u>Nava-Ramirez</u>, the driver he did not present evidence that had he requested permission to leave from the car's owner (who was a passenger), or otherwise attempted to depart the scene, that he would have been able to do so prior to the search which produced the evidence. See also, <u>U.S. v. DeLuca</u>, 269 F.3d 1128, 1133 (10th Cir. 2001)(denial of motion to suppress affirmed because movant failed to show that had he requested to leave to scene of the traffic stop he would have been able to do so in the car which was searched).

Claimant argues the case of <u>U.S. v. Guerrero-Espinoza</u>, 462 F.3d 1302 (10th Cir. 2006). In <u>Guerrero-Espinoza</u>, the passenger/owner of a vehicle consented to additional detention and questioning without knowing that the officer had completed the traffic stop and issued the driver a warning citation. The additional detention and questioning led to a consent to search the

vehicle. The Tenth Circuit held that the consent was not voluntary because the passenger/owner did not realize at the time of the consent that the traffic stop had ended and that he was free to leave. This case is distinguishable from Guerrero-Espinoza because claimant Shaw knew that the traffic stop had been completed and that he was free to go when Trooper Walker told him to have a safe trip. If Jones' decision to answer more questions was not voluntary, claimant Shaw may not use that fact to justify suppression because, first, claimant Shaw must establish a violation of Shaw's constitutional rights, and second, claimant Shaw must establish a factual nexus between his alleged illegal detention and the challenged evidence. See Nava-Ramirez, 210 F.3d at 1131.

In addition, at the point that Trooper Walker asked Jones to exit the car, Trooper Walker had reasonable suspicion to extend the detention of Shaw and Jones to answer more questions. At that time, he knew that Shaw had a prior drug conviction and that both Shaw and Walker had prior convictions for assault. Their car had a heavy odor of air freshener. They were driving to a state which is known as a drug source and were carrying a large amount of cash. Their alleged reason for going to Arizona (to attend car races in about three weeks) seemed dubious. In addition, claimant Shaw seemed excessively nervous during the citation process, even after

9

being told that he would not be arrested for driving without a license.  These circumstances were sufficient for Trooper Walker to extend his investigation after the initial reason for the traffic stop had been concluded.  See U.S. v. Simpson, 609 F.3d 1140 (10th Cir. 2010)(finding reasonable suspicion to extend a stop on the basis of prior conviction for drug transportation, extreme nervousness, and inconsistent answers about seemingly implausible travel plans).

    C.   <u>Consent to answer questions and to open the trunk</u>

Finally, the court finds that claimant Shaw voluntarily agreed to answer questions and to open the trunk so that Trooper Walker could look inside.  Looking at the totality of the circumstances set forth earlier in this order, the court finds that a reasonable person in the position of claimant Shaw would believe that he was free to decline to answer questions from Trooper Walker after the officer had returned his documents, wished him a safe trip, turned around, and walked a couple of steps back to his car.  Trooper Walker was not intimidating when he asked claimant, "mind if I ask you something?"  As for the request to open the trunk, Trooper Walker's phrasing was more commanding – "you want to open it up and show me?"  Still, the court believes that a reasonable person in claimant Shaw's position would have felt free to refuse the request, even if at this point the encounter had turned into a

detention based upon reasonable suspicion.  This case is similar to U.S. v. Contreras, 506 F.3d 1031, 1036-37 (10th Cir. 2007).  In Contreras, as in this case, there was a traffic stop on an open interstate highway in broad daylight.  The officer told the defendant he was not going to give her a ticket and to "drive safe."  Then, while standing at the driver's car window, he asked, "You wouldn't mind opening your trunk real quick before I let you go, would you?"  The Tenth Circuit agreed with the district court that the driver's assent to this question was voluntary, even if she was still under lawful detention.  The court emphasized the following factors:  1) the officer's casual phrasing; 2) his tone of voice; 3) the absence of a show of force; 4) the stop was in broad daylight on an interstate highway; and 5) the driver repeatedly said "okay" in response to the requests for consent.  The same factors indicate that claimant Shaw voluntarily consented to open the trunk in this case and the court so finds.

IV.  Conclusion

For the above-stated reasons, claimant's motion to suppress shall be denied.

**IT IS SO ORDERED.**

Dated this 26th day of November, 2012, at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge